## APPEAL OF DAVID GIBSON CO.

Docket No. 2458.    Submitted October 22, 1925.    Decided February 3, 1926.

On the evidence, *held*, that the taxpayer is not entitled to a greater deduction in 1918 on account of abandoning or discarding manuscripts than that allowed by the Commissioner.

*Paul Potter, Esq.*, for the taxpayer.
*W. Frank Gibbs, Esq.*, for the Commissioner.

### Before PHILLIPS and TRAMMELL.

This is an appeal from the determination of a deficiency in income and profits taxes for the calendar year 1918. The petition states, and the Commissioner's answer admits, that the taxes in controversy amount to $1,599.22. The letter from which the appeal is taken states an additional tax of $1,711.45, less an overassessment of $202.75, or a net additional tax of $1,508.70, to be due for 1918.

The error alleged is the disallowance by the Commissioner of part of a claimed deduction on account of obsolescence of manuscripts.

#### FINDINGS OF FACT.

The taxpayer is an Ohio Corporation, with its principal office at Cleveland. It was organized in June, 1908, with a capital stock of $10,000.

About one-third of the capital stock was issued to David Gibson in exchange for some 375 or 400 manuscripts, which had been written by Gibson, covering general editorial matter, such as economic and business subjects, short sketches and stories, and biographies. R. E. Evans turned in to the corporation certain contracts for the publication of magazines, in which it was proposed to use the Gibson manuscripts, receiving in exchange about one-third of the capital stock of the taxpayer. The remainder of the stock was issued to R. E. Gammel for cash in the approximate amount of $3,300.

The manuscripts acquired from Gibson were entered on the books of the taxpayer as an asset, at a cost of $3,000, or $8 per manuscript. Thereafter, Gibson and one Feather, who became an officer of the company in 1916, prepared numerous manuscripts for the taxpayer, and some were purchased by it for amounts ranging from $10 to

$25 each, about 2,000 being acquired by these methods to and including the year 1918. Gibson and Feather were paid salaries for their services, which included the preparation of manuscripts. The cost of the manuscripts purchased was originally entered on the taxpayer's books as a capital expenditure, but was later charged to expense.

The manuscripts acquired from Gibson upon organization of the taxpayer had an average fair market value as of March 1, 1913, of at least $8 each.

The taxpayer, in some instances, rented out its manuscripts, and, in others, used them in what it termed " house organs," that is, by surrounding the text or editorial taken from the manuscripts by advertising and selling the publication thus prepared to the advertisers.

Some of the manuscripts were used regularly by the taxpayer in its business from 1908 to and including 1916. In 1917, it considered that about 100 of them had become obsolete and could no longer be used, and it accordingly charged off on its books the sum of $800. In 1918, the taxpayer deemed the remaining original manuscripts, about 275 in number, to have become obsolete and charged off $2,200 to cover the claimed loss.

It was considered by the taxpayer that the manuscripts had become obsolete, due partly to the fact that the subject-matter of the writings had been used frequently and to the point where it was no longer of interest to the public, and partly to the changes over a period of years, and particularly during the war period, in theories underlying certain of the subjects treated in these writings.

The company has made no use of, nor has it offered to sell, any of the manuscripts since 1917 and 1918, when it charged them off, although it still retains them in its files.

DECISION.

The determination of the Commissioner is approved.

OPINION.

TRAMMELL: The Commissioner, in adjusting the tax liability by allowing a deduction on account of the abandonment of 66 manuscripts, on the basis of a value of $8 each, did so on the theory that, with the exception of those used in 1918, the others had become obsolete prior to that time. A tabulation of the years in which the manuscripts were used, submitted by the taxpayer, shows that no use of a great many of them was made after the first few years following their acquisition, while others were used several times during the entire period of 1908 to 1918. Some were used

only once, and others a number of times. The testimony of the former secretary-treasurer and editor is to the effect that the manuscripts were not discarded prior to 1918, for the reason that they had a potential value. However, a number of the writings were not used after the first few years of the organization of the taxpayer company. Others were discarded later, and we are of the opinion that those manuscripts became obsolete prior to the year 1918. A deduction may be allowed in 1918 with respect only to those manuscripts which were abandoned or discarded in that year. We believe from the evidence, however, that those manuscripts which the taxpayer had ceased to use prior to 1918 were abandoned and became obsolete prior to that year.